THE PEOPLE ex rel. GEORGE M. THOMPSON, APPELLANT, *v.* THE BOARD OF SUPERVISORS OF THE COUNTY OF HAMILTON, RESPONDENT.

*Hamilton county — publication of notices in — Chap.* 662 *of* 1870 — *Power of comptroller to designate newspapers to publish notices of redemption.*

Chapter 662 of 1870, providing that all legal notices and advertisements, required by law to be published in the county of Hamilton, shall be published in such newspaper or newspapers as shall be designated by the board of supervisors, was not intended to alter the *number* of papers in which notices should be published, but only to enable the board of supervisors to designate newspapers out of that county, until one should be published therein.

The power conferred upon the comptroller, by chapter 427 of 1855, in case no newspapers were designated by the board of supervisors to print the session laws, to designate newspapers in which to publish notices for the redemption of lands sold for non-payment of taxes, is not taken away by chapter 662 of 1870, and if only one newspaper is designated under the latter act the comp-

troller may select an additional paper in which such notices of redemption are
to be published.

Nor was his power so to do affected by the passage of chapter 215 of 1870, pro-
viding that if there be only one paper printed in the county the session laws
shall be published in that paper.

APPEAL by the relator from an order of Judge LANDON, at Spe-
cial Term, denying a motion for a peremptory mandamus requiring
the defendants to reconvene and audit and allow to the relator his
account for $686.25.

His account was for publishing, pursuant to the direction of the
comptroller, in his newspaper, the Hamilton County Journal,
printed and published in Johnstown, in the county of Fulton, a
notice and list of lands sold for taxes in the year 1871, and remain-
ing unredeemed in Hamilton county.

From the affidavits on which the motion was heard, it appeared
that at the annual meeting of the board of supervisors of Hamil-
ton county, the Hamilton County Democrat, a paper printed in
Johnstown, Fulton county, and circulated in Hamilton county, was
duly designated by said board as the newspaper in which should be
published, during the year 1873, the session laws of this State and
all legal notices and advertisements required by the laws of this
State, or any local or special law, to be published in the county of
Hamilton.

That at said meeting the relator requested said board to desig-
nate the said Hamilton County Journal for the same purpose.

That said board declined to do so, on the ground that said board
was not required by law to designate two newspapers for that
purpose.

That on the 28th of February, 1873, the comptroller selected
and requested the said Hamilton County Journal to publish said
notices, and the same were afterward published in said paper seven
weeks ending on the 11th day of April, 1873.

That relator presented his bill therefor to said board to be audited
at its annual session in 1873 and in 1874, and that said board refused
to audit and allow the same.

*R. H. Rosa*, for the relator.

*J. M. Carroll*, for the respondent.

*Per Curiam:*

Chapter 662 Session Laws 1870, enacts that "all legal notices and advertisements, required by the laws of this State, or by any special law, to be published in the said county of Hamilton, shall be published *in such newspaper or newspapers* as shall be designated by the board of supervisors."

The question is whether the words "in such newspaper or newspapers" are intended to change the general laws as to the number of newspapers in which notices are to be published, or whether they only express the idea that such notices, as are by general laws to be published in one newspaper, are not by this act required to be published in more than one. The latter seems to be the best construction of the act. It was not passed for the purpose of changing the general system as to the number of papers in which notices should be published. Its object was only to enable the supervisors to designate newspapers out of that county, until a newspaper should be published therein. This is in analogy to the Laws 1845, chapter 280.

Then we have chapter 427 of Laws of 1855. Section 61 requires the notices in question to be published in the newspapers designated to publish the Session Laws, and requires the boards of supervisors to audit and pay the expenses. Section 62 enacts that, if no newspapers shall have been thus designated, the comptroller shall select two newspapers in the county; if there are not two in the county, then he is to select two which he believes to be most generally circulated.

Thus, as the supervisors had designated only one newspaper, and as the general law required publication in two, the comptroller rightfully selected another.

This view is strengthened by the fact that chapter 690, Laws of 1866, in certain cases, when one of the papers designated by that law refused to publish, did permit a publication in the other paper only. The repeal of that act by chapter 662, Laws of 1870, is an indication that no such exception to the general laws in respect to publication prevails any longer.

It is urged that section 62, of chapter 427, Laws of 1855, does not require the supervisors to pay the expense of publication in newspapers selected by the comptroller.

But this section must be read in connection with section 61. The obligation to pay the expense of such publication is not to be escaped by the neglect to designate newspapers. It is intended that this expense should be borne by each county; and none the less because the newspapers are selected by the comptroller on account of the failure of the supervisors to act.

Chapter 215, of the Laws of 1870, provides for the mode of selecting two papers to publish the Session Laws in the several counties. And it enacts that, if there be only one paper printed in the county, the laws shall be published in that paper. But there is no reason to understand that this clause takes from the comptroller the general duty imposed by section 62, above mentioned, of publishing the tax notices in two newspapers for each county. And therefore that act does not affect the present case.

We think, for these reasons, that the order denying mandamus should be reversed, with ten dollars costs and printing, and mandamus granted, with ten dollars costs.

Present — LEARNED, P. J., BOCKES and BOARDMAN, JJ.

Order reversed, with ten dollars costs and printing, and order for mandamus granted, with ten dollars costs.